IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION,<br><br>    Plaintiff,<br><br>v.<br><br>S.F. ADVISORS, LLC, d/b/a AFFINITY CLUB NETWORK, LLC, JOHN LAROCCA, RAVI V. KOTHARE, and DAVID M. MASER<br><br>    Defendants. | Case No. _____ |

**PLAINTIFF'S VERIFIED COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Major League Baseball Players Association, for its Verified Complaint against defendants S.F. Advisors, LLC d/b/a Affinity Club Network, LLC ("ACN"), John Larocca, Ravi V. Kothare and David M. Maser (collectively, "Defendants"), states as follows:

**PARTIES**

1.    Plaintiff Major League Baseball Players Association ("Players Association") is an unincorporated association organized under the laws of the State of New York, comprised of all persons who are employed as active Major League baseball players. The Players Association's principal place of business is 12 E. 49th Street, New York, New York, 10017.

2.    Upon information and belief, defendant S.F. Advisors, LLC is a Pennsylvania limited liability company located at 10 East Glenside Avenue, Glenside, PA 19038.

3.    Upon information and belief, ACN is registered as a fictitious business in Pennsylvania, with a principal place of business 1500 JFK Blvd, Suite 200, Philadelphia, PA,

1979034.5

19102. ACN has represented itself as a corporation or LLC organized under the laws of the State of New Jersey, but the New Jersey Secretary of State has no record of ACN.

4. Upon information and belief, defendant John Larocca is an owner of S.F. Advisors, LLC, and resides at 105 S. Easton Rd., Glenside, PA, 19038.

5. Upon information and belief, defendant Ravi V. Kothare is the chairman and CEO of ACN, and offices at ACN's principal place of business, 1500 JFK Blvd, Suite 200, Philadelphia, PA 19102.

6. Upon information and belief, defendant David M. Maser is an officer or employee of ACN who has corresponded with the Players Association on behalf of ACN. He has offices at 3741 Ridgeview Rd., Huntington Valley, PA 19006.

## JURISDICTION AND VENUE

7. This court has jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1367(a).

8. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b). Defendants are residents of or have significant contacts with this judicial district. ACN's principal place of business is located in this district and Defendants offer and sell products and services in this district. Furthermore, Defendants have committed the acts complained of in this Complaint within this district.

## BACKGROUND

**A.  The Players Association's Exclusive Group Licensing Rights and Registered Trademarks**

9. The Players Association, through written authorizations from each of its members, owns the exclusive world-wide right to use and license others to use the publicity rights, including without limitation the names, uniform numbers, nicknames, playing records,

biographical sketches, images and likenesses, of all active Major League baseball players ("Player Rights") in connection with any promotions, products, product lines and commercial projects and/or events that utilize three (3) or more active Major League baseball players.

10. For approximately forty years, the Players Association has operated a group licensing program under which persons and firms have been authorized to make commercial uses of the names, likenesses and other personal indicia of active Major League baseball players on and in connection with films, television broadcasts, trading cards, apparel, posters, board games, computer and Internet games, collectibles, memorabilia and other products and services.

11. The Players Association's exclusive group licensing rights are well-known and well-recognized in the sports licensing industry. Sellers of licensed products and services represent that such products and services are licensed by the Players Association in order to lend an aura of authenticity and, hence, greater value and credibility, to such products and services.

12. Any person or entity desiring to make a commercial use of the publicity rights of three (3) or more active Major League baseball players must first obtain the written consent of the Players Association via a license from the Players Association.

13. The Players Association has granted licenses for the use of names, likenesses and other personal indicia of active Major League players to numerous entities in a variety of business areas. Pursuant to their license agreements, such entities pay the Players Association royalties for the right to use the players' publicity rights in connection with their businesses.

14. The Players Association is the owner of a family of trademarks incorporating the terms PLAYERS CHOICE and the goodwill associated with those marks (hereinafter the "PLAYERS CHOICE Marks or "MARKS"), including U.S. Trademark Registration No. 2,847,672 for PLAYERS CHOICE, U.S. Trademark Registration No. 2,929,068 for PLAYERS

1979034.5

CHOICE, U.S. Trademark Registration No. 2,537,150 for PLAYERS CHOICE, U.S. Trademark Registration No. 2,553,756 for MLB PLAYERS CHOICE and Design; U.S. Trademark Registration No. 2,573,984 for MLB PLAYERS CHOICE and Design, U.S. Trademark Registration No. 2,215,399 for Baseball Player Design; U.S. Trademark Application No. 78/552,305 for PLAYERS CHOICE CLUB; U.S. Trademark Application No. 78/552,306 for PLAYERS CHOICE PLATINUM CLUB; U.S. Trademark Application No. 78/552,308 for PLAYERS CHOICE DIAMOND CLUB; and U.S. Trademark Registration No. 2,501,504 for PLAYERS CHOICE AWARDS.

**B.     ACN**

15.    ACN is in the business of offering for sale, advertising, promoting and distributing direct-marketing baseball membership clubs. ACN offers its club members discounted benefits of baseball-related products, as well as other services and events.

16.    For instance, ACN represents to its members that they are entitled to participate in city-by-city, year-round special events in which fans meet Major League baseball players in off-the-field settings. Other membership benefits purportedly include allowing members to accumulate monthly points that can, in turn, be redeemed for authentic player autographs and passes to MLB clubs' special events, as well as for certain custom collectibles and savings on player-licensed products.

17.    ACN offers its direct-marketing baseball membership clubs through its websites www.playerschoiceclub.com and www.playerschoicegold.com.

18.    ACN uses photographs, names, likenesses and other personal indicia of active Major League baseball players in connection with its marketing and promotion of its products

and services, including on its websites. *See* copy of www.playerschoicegold.com homepage, attached as Exhibit A.

19. ACN also uses the Players Association Marks, specifically the PLAYERS CHOICE CLUB mark, in connection with its marketing and promotion of its products and services. *See* Exhibit A. Indeed, the Players Association PLAYERS CHOICE CLUB mark is contained on virtually every page of ACN's website. *See* Exhibit B.

20. ACN's websites also specifically allege that it is "licensed by the Major League Baseball Association." *See* Exhibit A.

C.   **License Agreement Between the Players Association and ACN**

21. On November 15, 2004, MLBA entered into a license agreement ("License Agreement") with ACN whereby the Players Association granted ACN a license to operate "player membership clubs" utilizing the PLAYERS CHOICE mark, as well as other Player Rights to provide benefits for ACN network members. *See* License Agreement, attached as Exhibit C.

22. In the License Agreement, ACN acknowledged the Players Association's exclusive group licensing rights and that ACN required a license from the Players Association to lawfully operate its direct-marketing membership clubs.

23. Pursuant to the terms of the License Agreement, ACN was to make royalty payments to the Players Association, based on percentages of membership fees, members' purchases of products, and sale of other sports and entertainment membership clubs. The License Agreement provided a guaranteed minimum royalty of $1,200,000 during 2006, made payable as follows: $150,000 on or before March 31, 2006; $300,000 on or before June 30, 2006;

$400,000 on or before September 30, 2006; and $350,000 on or before December 31, 2006. *See* Exhibit C, Schedule B.

24.  Pursuant to paragraph 17(a)(i)(g) of the License Agreement, the Players Association has the right to immediately terminate the Agreement where ACN "two or more times during a twelve month period fails to make timely payment of royalties when due or fails to make timely submission of royalty statements when due." *See* Exhibit C.

25.  The License Agreement also contains a "Post-Termination/Expiration" clause delineating ACN's rights and obligations once its license with the Players Association is no longer in effect ("Post-Termination Clause"). *See* Exhibit C, ¶18.

26.  That clause provides: "Upon termination of this Agreement, Licensee . . . shall have no right to offer for sale, sell, advertise, promote, and/or distribute Licensed Products or to use in any way the Rights, the Trademarks, or any Advertising and Promotional Material or Premium Products relating to the Licensed Products..." The Licensed Products are defined in the agreements as:

> Licensee shall utilize the Rights and Trademarks in connection with the marketing and administration of direct-marketing membership club(s). Such club(s) shall include a "regular" membership club and a kids' club, and Licensee may also include family, premium and/or other memberships as approved by the Players Association. Benefits offered to club members may include, but shall not be limited to, the provision of baseball-related products, services and/or events, as approved in advance in writing by the Players Association. Benefits may only be offered to club members, either for free or for a price specified in advance.

*See* Exhibit C, ¶18, Schedule B. Thus, ACN contractually agreed not to operate its membership clubs utilizing Player Rights or use the Players Association's trademarks after its license agreement with the Players Association terminated.

6

1979034.5

27. Similarly, the Post-Termination clause requires ACN, after expiration of the license agreement, to "refrain from further use of the Rights and/or the Trademarks [as those terms are defined in the agreement] or any further reference to them . . . in connection with the manufacture, offering for sale, sale, advertising, promotion, publication and/or distribution of Licensee's products." *See* Exhibit C, ¶18(e).

28. The Post-Termination clause further states that upon termination by the Players Association, all royalties, including minimum guaranteed royalties, shall become immediately due and payable. *See* Exhibit C, ¶18(b).

29. The License Agreement states that "[i]n the event this Agreement is terminated for any reason, . . . full ownership and control of the membership database shall automatically transfer to MLBPA." *See* Exhibit C, Schedule B.

30. The Post-Termination clause further provides that failure to cease the advertisement, promotion and/or use of the Licensed Products will result in immediate and irreparable damage to the Players Association. ACN acknowledged that there is no adequate remedy at law for failure to cease such activities, and that the Players Association may commence an action in any court having jurisdiction and shall be entitled in such court to equitable relief and such other relief as a court may deem just and proper. *See* Exhibit C, ¶18(f).

**D.   Defendants' Wrongful Conduct.**

31. ACN represented in the License Agreement that it is a "New Jersey corporation, with offices located at 750 Route 73 South Street, Marlton, NJ 08055. *See* Exhibit C.

32. Upon information and belief, ACN is only registered as a fictitious name in Pennsylvania and has never been registered as a New Jersey corporation. Further, the Players Association has been unable to locate *any* state in which ACN is incorporated or organized.

1979034.5

33. Upon information and belief, John Larocca formed S.F. Advisors, LLC, a Pennsylvania limited liability company. S.F. Advisors subsequently filed a fictitious name registration to use ACN as the name under which it does business.

34. Thus, S.F. Advisors is doing business as ACN, but has at all times before, during and after the License Agreement, withheld this information from the Players Association.

35. None of the owners or employees of ACN or S.F. Advisors – specifically, John Larocca, Ravi Kothare or David Mather – advised the Players Association at any time that ACN is not really a corporation or limited liability company -- as it stated in the License Agreement – but is merely a fictitious name for which S.F. Advisors does business.

E. **ACN's Breaches of the License Agreement**

36. In 2006, ACN failed to make timely payment of $200,000 towards the guaranteed minimum royalty, which was due on or before June 30, 2006. ACN also failed entirely to pay the sum of $350,000, which was due on or before September 30, 2006.

37. On October 23, 2006, the Players Association notified ACN that its License Agreement had been terminated. *See* October 23, 2006, letter, attached as Exhibit D.

38. In the termination letter, the Players Association advised ACN of certain post-termination obligations, including (1) payment of the remainder of the 2006 minimum royalty guarantee in the amount of 700,000; (2) discontinuation of all use of licensed Rights and Trademarks; and (3) forwarding an electronic file and printed copy of ACN's membership database. *See* Exhibit D.

39. On October 25, 2006, ACN sent an e-mail notification to its current members that utilized the PLAYERS CHOICE mark and indicated that member benefits would continue until December 31, 2006. *See* October 25, 2006, e-mail, attached as Exhibit E.

1979034.5

40. ACN's indication that membership benefits will run through the end of 2006 is contrary to the immediate termination provisions in the License Agreement. Further, ACN's e-mail suggests that new club(s) in 2007 will continue to utilize Player Rights, which is also contrary to the post-termination provisions and ACN's acknowledgement of the Player Association's rights contained in the License Agreement. *See* Exhibit E.

41. On November 2, 2006, the Players Association's outside counsel sent a letter to ACN, demanding that ACN immediately cease its use of the Players Association's Marks, cease any activity which utilizes the Player Rights without authority from the Players Association, and to fulfill its post-termination obligations pursuant to the License Agreement. *See* Exhibit F.

42. On November 7, 2006, ACN sent a letter to the Players Association, disputing the Players Association's termination of the License Agreement on the basis of a typographical error in the termination letter. ACN stated position was that the Players Association's October 23, 2006, letter indicated that the missed royalty payments were not within a twelve-month period, and thus not grounds for termination. *See* Exhibit G. ACN also stated that it would continue its business consistent with the License Agreement until at least December 31, 2006.

43. On November 14, 2006, the Players Association sent another letter, correcting the typographical error, again advising ACN that it had failed to make timely payment of $200,000 towards the guaranteed minimum royalty, which was due on or before June 30, 2006, and has failed to pay the sum of $350,000 which was due on or before September 30, 2006. The letter states that the Players Association "hereby terminates ACN as a licensee of the Players Association effective immediately." *See* Exhibit H. The letter further demanded that ACN fulfill all of its post-termination obligations under the License Agreement.

1979034.5

44. Despite numerous letters and telephone calls from the Player Association to representatives of ACN, ACN continues to use the Players Rights in its business operations, even though its use of the Player Rights is no longer licensed by the Players Association.

45. ACN also continues to use the Players Association Marks, specifically the PLAYERS CHOICE and PLAYERS CHOICE and Design marks, in its operations, even though it is no longer licensed to do so by the Players Association.

46. ACN has also failed to comply with its post-termination obligations pursuant to the License Agreement. The Players Association has not received any payment from ACN since termination. Both of ACN's websites remain active, and ACN has failed to forward the membership database to the Players Association.

## COUNT I

### TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

47. The Players Association incorporates herein by this reference paragraphs 1 through 46 above.

48. ACN's continued use of the Players Association's registered PLAYERS CHOICE and MLB PLAYERS CHOICE and Design marks in commerce in connection with the sale, offering for sale, distribution, or advertising of its goods and services violates the Lanham Act, 15 U.S.C. § 1114, because ACN's unauthorized use of the Players Association's marks is likely to cause confusion, or to cause mistake, or to deceive consumers into believing that ACN's goods or services are authorized or sponsored by, or affiliated, associated or connected with, Major League baseball players or their exclusive licensing agent the Players Association, when such is not the case.

49. As a result of ACN's violation of the Lanham Act, the Players Association and its members have been injured in an amount not presently known. At a minimum, the Players

1979034.5

Association is entitled to a recovery of damages of the amounts owed under the License Agreement and, in addition, an award of ACN's profits from its infringing actions.

50. The Players Association is without an adequate remedy at law. ACN's violation of the Lanham Act irreparably injures the players and the Players Association. The Players Association asks that the court preliminarily and permanently enjoin ACN from continuing the use of all the Players Association's Marks, as well as the names, nicknames, likenesses, images, playing records or other personal indicia of active Major League baseball players in connection with its direct-marketing baseball clubs or other commercial endeavors.

51. ACN's wrongful conduct is knowing, willful and intentional and the Players Association is entitled to treble profits or damages, whichever is greater, and attorneys fees under Section 35 of the Lanham Act.

## COUNT II

### UNFAIR COMPETITION (15 U.S.C. § 1125(a))

52. The Players Association incorporates herein by this reference paragraphs 1 through 51 above.

53. The use in commerce by ACN of the marks PLAYERS CHOICE, PLAYERS CHOICE CLUB and MLB PLAYERS CHOICE and Design in connection with its goods and service is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of ACN with the Players Association, or as to the origin, sponsorship, or approval of ACN's goods, services or commercial activities by the Players Association.

54. The terms PLAYERS CHOICE, PLAYERS CHOICE CLUB and MLB PLAYERS CHOICE and Design used by ACN are identical to the Players Association's PLAYERS CLUB marks.

1979034.5

55. Purchasers are likely to purchase ACN's products and services based on the false association with the Players Association's products and services, thereby resulting in the loss of sales to the Players Association.

56. The Players Association has no control over the quality of goods and services offered by ACN and, because of the confusion as to source engendered by ACN, the Players Association's valuable goodwill in its trademarks is damaged by the actions of ACN.

57. Additionally, ACN falsely implies that the Players Association has approved or authorized ACN's clubs by affirmatively representing on its website that it is "licensed by the Major League Baseball Players Association," when such is not the case.

58. ACN's actions constitute unfair competition, false representation and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a) and (d).

59. ACN's unfair competition, false representation and false designation of origin has been willful, deliberate and designed specifically to trade upon the goodwill associated with the Players Association's services and trademarks.

60. These wrongful acts have caused and will continue to cause the Players Association substantial injury, including loss of customers, damage to its goodwill, confusion of existing and potential customer, injury to its reputation and diminution of the value of its trademarks and products.

61. The Players Association has sustained irreparable harm due to the danger of injury to its reputation and goodwill caused by ACN's infringement of the Players Association's trademarks, and the amount of damage will be difficult to ascertain if these acts continue.

1979034.5

62.     The Players Association is entitled to the relief provided in 15 U.S.C. §§ 1117, including the recovery of (1) ACN's profits; (2) any damages sustained by the Players Association; (3) the cost of this action; and (4) reasonable attorney's fees incurred by the Players Association in bringing this action. Further, the Players Association is entitled to an entry of judgment for three times such profits or damages, whichever is greater, together with prejudgment interest on such amount pursuant to the provisions of 26 U.S.C. § 6621.

## COUNT III

### RIGHT OF PUBLICITY (MISAPPROPRIATION)

63.     The Players Association incorporates herein by reference paragraphs 1 through 62 above.

64.     The publicity rights of active Major League baseball players are valuable commercial properties, and the right to use and license others to use these rights in groups of three (3) or more belongs exclusively to the Players Association. The Players Association has for approximately 40 years licensed those publicity rights for the benefit of its members, exercising quality control over licensed products and collecting fees and royalties.

65.     ACN was on notice that the Players Association had terminated the License Agreement on October 23, 2006. ACN does not have and has not had since that date, the consent of the Players Association to use the players' publicity rights.

66.     By using the publicity rights of hundreds of active Major League baseball players without the Players Association's consent, ACN has misappropriated the identity of those players for ACN's commercial benefit.

67. As a result of ACN's misappropriation of the players' names, identities, and likenesses, the Players Association and its members have been injured in an amount not presently known. The Players Association is entitled to recover such damages.

68. Notwithstanding any damages that might be recoverable for these infringements, the Players Association is without an adequate remedy at law. ACN's misappropriation of the players' names, identities and likenesses irreparably harms the players and the Players Association, depriving them of the right to control the commercial use of their publicity rights and by potentially diluting the value of the Players Association's licenses. The Players Association asks that the court preliminarily and permanently enjoin ACN from offering direct-marketing baseball membership clubs, or from any other commercial activity that in any manner use the names, identities, likenesses, images, playing records or other personal indicia of active Major League baseball players.

69. In addition, the Players Association should be awarded attorneys' fees incurred in connection with this cause of action.

## COUNT IV

## BREACH OF CONTRACT

70. The Players Association incorporates herein by this reference paragraphs 1 through 69 above.

71. As alleged above, ACN entered into a License Agreement with the Players Association allowing ACN, strictly in accordance with the terms of that agreement, to use the Players Association's Marks, as well as the right to utilize the publicity rights of active Major League baseball players, in ACN's direct-marketing baseball clubs.

72. Pursuant to the License Agreement, ACN was to make royalty payments to the Players Association, based on percentages of membership fees, members' purchases of products,

and sale of other sports and entertainment membership clubs. The License Agreement provided certain guaranteed minimum royalties that were to be made payable during the course of 2006.

73. Pursuant to the License Agreement's Post-Termination Clause, ACN agreed not to utilize the Players Rights for commercial purposes, or use the Players Association's Marks, after the conclusion of its agreement with the Players Association.

74. ACN continues to use the Players Rights in its business operations, even though its use of the Player Rights is no longer licensed by the Players Association.

75. ACN also continues to use the Players Association Marks, specifically the PLAYERS CHOICE and PLAYERS CHOICE and Design marks, in its operations, even though it is no longer licensed to do so by the Players Association.

76. ACN has also failed to comply with its post-termination obligations pursuant to the License Agreement. Upon termination, the unpaid balance of the 2006 minimum guaranteed royalty became immediately due, yet, the Players Association has not received any payment from ACN since termination. Both of ACN's websites remain active, and ACN has failed to forward the membership database to the Players Association.

77. Given these various license provisions, ACN, by continuing to advertise, promote and use the names and identities of active Major League baseball players, as well as the use of the Players Association's marks, after expiration of its license agreement with the Players Association, is in flagrant and willful breach of the contract.

78. As a result of ACN's breach of the License agreement, the Players Association and its members have been injured in an amount not presently known. The Players Association is entitled to the recovery of damages and, in addition, to an award of defendants' profits from its wrongful actions.

1979034.5

79. Additionally, as ACN acknowledged in the License Agreement, the Players Association is without an adequate remedy at law. ACN's breach of contract irreparably injures the players and the Players Association. The Players Association asks that the court grant permanent injunctive relief enjoining ACN from (1) continuing the use the names, nicknames, likenesses, images, playing records or other personal indicia of active Major League baseball players; (2) any and all use of the PLAYERS CHOICE CLUB and/or PLAYERS CHOICE and Design marks in any format whatsoever, including the use of the marks on ACN's websites; (3) billing of current memberships; (4) selling of new memberships and renewals. The Players Association also asks the court to order ACN, pursuant to the terms of the Post-Termination provision in the License Agreement, to (1) immediately pay the Players Association all guaranteed minimum royalties; (2) refund all payment made by members for months beyond October, 2006, including prorated refunds on annual memberships; and (3) immediately send to the Players Association an electronic file, with an attached printed hard copy, of the entire membership database including the name, address, e-mail address, membership start date, membership status, membership payment date and method for each member separately.

## COUNT V

### FRAUDULENT MISREPRESENTATION

80. The Players Association incorporates herein by this reference paragraphs 1 through 79 above.

81. ACN misrepresented in the License Agreement that it is a New Jersey corporation, with offices located at 750 Route 73 South Street, Marlton, NJ 08055.

82. In fact, ACN has never been registered as a New Jersey corporation, but was only registered by S.F. Advisors as a fictitious name in Pennsylvania.

1979034.5

83.     None of the owners, officers, agents or employees of ACN or S.F. Advisors – specifically, John Larocca, Ravi Kothare or David Mather – advised the Players Association at any time before, during or after the term of License Agreement that ACN is nothing more than a d/b/a for S.F. Advisors.

84.     Defendants' false or untrue representations to the Players Association made in the License Agreement are statements of existing and material fact.

85.     The representations and omissions made by Defendants were known to be false by Defendants, or were recklessly made without knowledge concerning them.

86.     The representations made by Defendants were intentionally made for the purpose of inducing the Players Association to act upon them.

87.     The Players Association reasonably relied and acted upon the representations made and omissions in determining to license ACN.

88.     The Players Association has sustained damage in an amount to be determined at trial by relying upon Defendants' representations.

WHEREFORE, for the foregoing reasons, the Players Association hereby prays for the following relief:

(1)     preliminary and permanent injunctive relief enjoining ACN from (a) continuing the use the names, nicknames, likenesses, images, playing records or other personal indicia of active Major League baseball players; (b) any and all use of the Players Association's Marks, including the PLAYERS CHOICE CLUB, PLAYERS CHOICE and/or PLAYERS CHOICE and Design marks, in any context or format whatsoever, including the use of the marks on ACN's website; (c) billing of current memberships; and (d) selling of new memberships and renewals; and

1979034.5

(2) an Order directing ACN to (a) make immediate payment of all guaranteed minimum royalties; (b) refund all payments made by members for months beyond October, 2006, including prorated refunds on annual memberships; and (c) immediately send to the Players Association an electronic file, with an attached printed hard copy, of the entire membership database including the name, address, e-mail address, membership start date, membership status, membership payment date and method for each member separately; and

(3) an award of damages to compensate the Players Association for the losses it has suffered as a result of Defendants' wrongful conduct;

(4) an accounting and disgorgement of ACN's profits associated with its direct-marketing baseball clubs;

(5) a trebling of such monetary awards;

(6) pre-judgment interest;

(7) an award of attorneys' fees and costs; and

(8) any and all other relief that this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

The Players Association demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Camille M. Miller*
CAMILLE M. MILLER
MELANIE A. MILLER
COZEN O'CONNOR, P.C.
1900 Market St.
Philadelphia, PA 19103
Phone: (215) 665-7273
Fax: (215) 701-2273
cmiller@cozen.com
miller@cozen.com

1979034.5

Of Counsel:
RUSSELL S. JONES, JR.
TRAVIS SALMON
SHUGHART THOMSON & KILROY, P.C.
Twelve Wyandotte Plaza
120 West 12th Street, Suite 1500
Kansas City, Missouri 64105
(816) 421-3355
(816) 374-0509 (Fax)
rjones@stklaw.com
tsalmon@stklaw.com

1979034.5

## VERIFICATION

STATE OF __MISSOURI__ )
                      ) SS.
COUNTY OF __JACKSON__ )

     Judith S. Heeter, being duly sworn on her oath, states that she holds the title of Director of Licensing for the Major League Baseball Players Association, has authority from the Players Association to sign and verify this Verified Complaint, has read the foregoing Verified Complaint and that the statements contained therein are true and accurate based on personal knowledge unless otherwise stated.

_Judith S. Heeter_
JUDITH S. HEETER

Subscribed and sworn to before me this __28th__ day of __November__, 2006.

_Kim Whittelsey-Dye_
NOTARY PUBLIC

My Commission Expires:

"NOTARY SEAL"
Kim Whittelsey-Dye, Notary Public
Jackson County, State of Missouri
My Commission Expires 9/28/2009
Commission # 05541725

1979034.5