IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION : : : | |
| : | 2:2006-cv-05211 |
| v. : | Jury Trial Demanded |
| : | |
| S.F. ADVISORS, LLC, d/b/a : AFFINITY CLUB NETWORK, LLC, : : | |
| JOHN LAROCCA, : : | |
| RAVI V. KOTHARE, and : : | |
| DAVID M. MASER : : | |

**DEFENDANTS S.F. ADVISORS, LLC, D/B/A AFFINITY CLUB NETWORK, LLC,
RAVI E. KOTHARE AND DAVID M. MASER'S
MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**

For the reasons set forth in the accompanying Memorandum of Law, Defendants S.F. Advisors, LLC, d/b/a Affinity Club Network, LLC ("S.F. Advisors"), Ravi E. Kothare and David M. Maser by and through their undersigned counsel respectfully move this Honorable Court pursuant to F.R.C.P. 12(b)(6) to dismiss Counts III and V of the Complaint for failing to state a cause of action for Misappropriation and Fraudulent Misrepresentation.

                                                     NEIL E. JOKELSON & ASSOCIATES, P.C.

                                      BY:_____/DEJ2238
                                          NEIL E. JOKELSON, ESQUIRE
                                          ATTORNEY I.D. #02486
                                          DAVID E. JOKELSON, ESQUIRE
                                          ATTORNEY I.D. #73734
                                          NEIL E. JOKELSON & ASSOCIATES, P.C.
                                          230 South Broad Street, 8th Floor
                                          Philadelphia, PA 19102
                                          (215) 735-7556

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION : | |
| : | 2:2006-cv-05211 |
| v. : | Jury Trial Demanded |
| : | |
| S.F. ADVISORS, LLC, d/b/a : | |
|     AFFINITY CLUB NETWORK, LLC, : | |
| : | |
| JOHN LAROCCA, : | |
| : | |
| RAVI V. KOTHARE, and : | |
| : | |
| DAVID M. MASER : | |

**ORDER**

And now this _____ day of _____, 2007, upon consideration of Defendant S.F. Advisors, LLC, d/b/a/ Affinity Club Network, LLC, Ravi V. Kothare and David M. Maser's Motion to Dismiss, and any response thereto, it is hereby ORDERED and DECREED that Counts III and V for Misappropriation and Fraudulent Misrepresentation. are Dismissed.

_____
JOYNER, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION | : <br> : <br> : |
| v. | :    2:2006-cv-05211 <br> :    Jury Trial Demanded <br> : |
| S.F. ADVISORS, LLC, d/b/a <br>     AFFINITY CLUB NETWORK, LLC, | : <br> : <br> : |
| JOHN LAROCCA, | : <br> : |
| RAVI V. KOTHARE, and | : <br> : |
| DAVID M. MASER | : <br> : |

**DEFENDANTS S.F. ADVISORS, LLC, D/B/A AFFINITY CLUB NETWORK, LLC, RAVI V. KOTHARE AND DAVID M. MASER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**

Plaintiff the Major League Baseball Players Association (the "Players Association") has brought suit against Defendant S.F. Advisors, LLC, D/B/A/ Affinity Club Network, LLC ("ACN") for breach of contract for purportedly failing to make two timely royalty payments. Although the gravamen of the Complaint is directly related to the contract between the parties, the Players Associations has added claims for Fraudulent Misrepresentation and Misappropriation against ACN and the individual Defendants. By including these claims, the Players Associations tries to recast what is otherwise a garden variety breach of contract claim into tortious activity. Pennsylvania law, however, bars parties from converting contract claims into tort. Accordingly, for the reasons set forth below, these claims must be dismissed.

**FACTS**

For the purpose of Defendants' Motion for Summary Judgment, the following is accepted as true. The Players Association owns "the exclusive world-wide right to use and license others to use the publicity rights, including without limitation the names, uniform numbers, nicknames, playing records, biographical sketches, images and likenesses, of all active Major League baseball players ('Player Rights') in connection with any promotions, products, product lines and commercial projects and/or events that utilize three (3) or more active Major League baseball players." Complaint at ¶9. The Players Association is also the owner of a family of registered trademarks incorporating the terms PLAYERS CHOICE as well as any goodwill associated with those marks. Complaint at ¶14. On November 15, 2004, MLBPA entered into a License Agreement granting "ACN a license to operate 'player membership clubs'" utilizing the PLAYERS CHOICE mark as well as other Player Rights to provide benefits for ACN network members. Complaint at ¶21. Plaintiff alleges that ACN is misidentified as a New Jersey Corporation in the License Agreement, and that in truth and in fact it is "registered as a fictitious business in Pennsylvania." Complaint at ¶3.

Pursuant to the terms of the License Agreement, ACN was to make guaranteed minimum royalty payments of $400,000.00 during 2005 payable as follows: $25,000.00 upon execution of the License Agreement; $75,000.00 on or before June 30, 2005; $150,000.00 on or before September 30, 2005; and $150,000.00 on or before December 31, 2005. See Schedule B to the License Agreement. ACN further agreed to make guaranteed minimum royalty payments of $1,200,000.00 during 2006 made payable as follows: $150,000.00 on or before March 31, 2006; $300,000.00 on or before June 30, 2006; $400,000.00 on or before September 30, 2006 and

2

$350,000.00 on or before December 31, 2006.  Complaint at ¶23.

Pursuant to Paragraph 17(a)(i)(g) of the License Agreement, the Players Association maintained the right to immediately terminate the License Agreement if ACN "two or more times during a twelve month period fails to make timely payment of royalties when due or fails to make timely submission of royalty statements when due."  Complaint at ¶24.  Moreover, upon lawful termination, Paragraph 18 provides that ACN "shall have no right to offer for sale, sell, advertise, promote, and/or distribute Licensed Products or to use in any way the Rights, The Trademarks, or any Advertising and Promotional Material or Premium Products relating to the Licensed Products..."   Complaint at ¶26.

On October 23, 2006, the Players Association notified ACN that pursuant to Paragraph 17(a)(i)(g) it was immediately terminating the License Agreement due to the following actions:

> ACN failed to make timely payment of $200,000.00 towards the Guaranteed Minimum Royalty which was due on or before June 30, 2005.  Currently, ACN has failed to pay the sum of $350,000.00 which was due on or before September 30, 2006.

In its termination letter, the Players Association further advised ACN of:

> certain post- termination obligations, including (1) payment of the remainder of the 2006 minimum royalty guarantee in the amount of 700,000; (2) discontinuation of all use of licensed Rights and Trademarks; and (3) forwarding an electronic file and printed copy of ACN's membership database. *See* Exhibit D.

Complaint at ¶38.

On November 2, 2006, Russell S. Jones, Esquire, counsel for the Players Association, wrote ACN and demanded, based upon the purported failure to make timely payment by June 30, 2005 and September 30, 2006, that ACN:

> immediately cease its use of the Players Association's Marks, cease any activity

3

>which utilizes the Player Rights without authority from the Players Association, and to fulfill its post-termination obligations pursuant to the License Agreement.

Complaint at ¶41.  Counsel for the Players Association further stated that

>If we do not hear from you on or before November 7, 2006, we will plan to move forward in seeking all legal remedies against your infringement, including such action as may be warranted against individuals responsible for fraudulent misrepresentations to the MLBPA.

Complaint at Exh. F.

ACN responded to the November 2, 2006 letter on November 7, 2006, by letter to "dispute MLBPA's termination."

>The October 23rd letter from Rick White you reference, states that ACN license agreement is terminated pursuant to paragraph 17(a)(i)(g) due to failure to make timely payments two or more times during a 12 month period.  However, the dates Mr. White refers to for non-payment, June 30, 2005 and September 30, 2006 are NOT within a 12 month period.  Therefore, this section does not apply.
>
>ACN will continue to operate under the terms of their license agreement dated November 14, 2004 until it expires December 31, 2006.

Complaint at Exh. G.  On November 14, 2006, the Players Association sent ACN another termination letter, again stating that it "hereby terminates ACN as a licensee of the Players Association effective immediately" pursuant to Section 17(a)(i)(g) for purportedly failing to make timely payment of $200,000 "due on or before June 30, 2006" and failing to "pay the sum of $350,000 which was due on or before September 30, 2006."  Complaint at ¶43.

On or about December 11, 2006, ACN and the Players Association, through their respective counsel, without admitting any liability, executed a Stipulation and Consent Injunction, which was approved by the Court, agreeing to abide by the post-termination provisions delineated therein including, *inter alia*, agreeing to discontinue using any Rights or

4

Trademarks under the License Agreement.

**ARGUMENT**

From these fact, the Players Association asserts five causes of action: 1) Trademark Infringement (15 U.S.C. 1114), 2) Unfair Competition (15 U.S.C. 1125(a)), 3) Right of Publicity (Misappropriation), 4) Breach of Contract, and 5) Fraudulent Misrepresentation.  With the exception of Count V for Fraudulent Misrepresentation, each count appears to be directed solely against Defendant ACN.[1]   For the reasons set forth below, Plaintiff's claims for fraudulent misrepresentation and misappropriation must be dismissed as a matter of law.[2]

**Issue I:      Plaintiff Cannot Establish a Claim for Fraudulent Misrepresentation Against ACN**

Plaintiff casts its fraud claim against ACN from a misrepresentation concerning ACN's legal identity.  In this regard, the Players Association asserts that ACN misidentified its legal status as a "New Jersey corporation" in the *exordium* to the License Agreement.  Plaintiff,

---

[1]To the extent Defendants' understanding of the pleading is incorrect, Defendants request that this Court direct Plaintiff to replead to provide more specificity on this point.

[2]Defendants address these state law claims under Pennsylvania law. While the contract contains a choice of law clause referencing New York law, this clause is very limited and only addresses the construction of the License Agreement.

> This Agreement is made within the State of New York and shall be construed in accordance with the laws of the United States and the State of New York.

See Licensing Agreement at 22.  This choice of law provision does not govern this litigation. Instead, this provision merely provides that the License Agreement shall be construed in accordance with New York law.  See Moses v. Business Card Express, Inc., 929 F.2d 1131, 1139-1140 (6th Cir. 1991) (distinguishing narrow choice of law provisions from broader provisions); and Cottman Transmission Sys. v. Melody, 869 F. Supp. 1180, 1188 fn. 4 (E.D. Pa. 1994)(Joyner, J) (finding the analysis in Moses persuasive).

however, fails to allege with any specificity how this misrepresentation is material, how it relied upon this misrepresentation to its detriment or how it was damaged by same. Accordingly, this claim must be dismissed.

To properly plead a cause of action for fraud under Pennsylvania law, the plaintiff must show:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to its truth or falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Scansource, Inc. v. Datavision - Prologix, Inc., 2005 U.S. Dist. LEXIS 7291, *5 (E.D. Pa. 2005). Federal law further requires that each of these elements be pled with particularity "'to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" Id. at *6, quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004).

Instead of making its averments with the requisite particularity, Plaintiff merely alleges with regard to materiality:

> 84.  Defendants' false or untrue representations to the Players Association made in the License Agreement are statements of existing and material fact;

with regard to reliance:

> 87.  The Players Association reasonably relied and acted upon the representations made and omissions in determining to license ACN;

and with regard to damages:

> 88.  The Players Association has sustained damage in an amount to be determined at trial by relying upon Defendants' representations.

6

These bare allegations cannot survive scrutiny. See Joffee v. Lehman Bros., 2005 U.S. Dist. LEXIS 12313 (D.N.Y. 2005) (loss causation must be pled with particularity); Scansource, Inc. v. Datavision - Prologix, Inc., 2005 U.S. Dist. LEXIS 7291 (D. Pa. 2005) (detrimental reliance must be pled with particularity); Simons v. Dynacq Healthcare, Inc., 2006 U.S. Dist. LEXIS 46503, *10 (E.D. Tx. 2006) (materiality must be pled with particularity).

The most glaring deficiency in Plaintiff's complaint is the wholesale failure to allege how the alleged misidentification of ACN as a New Jersey corporation in the *exordium* to the License Agreement caused harm. While the Players Association states in a conclusory fashion that damages exist, there is a failure to identify any causation.[3] In this case, Plaintiff rather clearly states that damages flowed from the failure to make two timely payment in the second year of the contract. As flawed as this assertion may be, it is the only statement of causation in relation to damages. As stated by the Third Circuit, "Plaintiffs must accompany their legal theory with

---

[3]The importance of this link has been stated by the Pennsylvania Supreme Court to be an "essential" element of any fraudulent misrepresentation claim:

> We come then to the remaining essential of an action for deceit, viz., that the plaintiff's justifiable reliance upon the defendant's fraudulently uttered misrepresentation was the proximate cause of the damage claimed. On the one hand, causation bears a close relation to the extent of a recipient's justifiable reliance upon an alleged misrepresentation while, on the other hand, it is related to the character and quantum of the damage said to have resulted therefrom. In part, the proximity of the cause depends on the degree of the reliance upon the misrepresentation and, in part, on the relationship of the reliance to the ultimate result. The rule in general is that "The maker of a fraudulent misrepresentation in a business transaction is liable for pecuniary loss caused to its recipient by his reliance upon the truth of the matter misrepresented if his justifiable reliance upon the misrepresentation is a substantial factor in determining the course of conduct which results in his loss."

Neuman v. Corn Exchange Nat'l Bank & Trust Co., 356 Pa. 442, 454, 51 A.2d 759, 765 (1947).

factual allegations that make their theoretically viable claim plausible." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). Here, there is no allegation concerning how the misidentification of ACN reasonably caused the loss allegedly sustained. See also Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp., 315 F. Supp. 2d 666, 679 (E.D. Pa. 2004) ("Just as one must plead reliance on the defendant's misstatement, the 'plaintiff must establish . . . that plaintiff's reliance on defendant's misstatement caused him or her injury' .... This 'loss' element consists of two parts. First, the plaintiff must allege that he or she suffered economic loss. 'If economic loss is evident, then plaintiff must prove a 'sufficient causal nexus between the loss and the alleged'" misrepresentation.) (addressing a Rule 10-b5 fraud[4]); Joffee v. Lehman Bros., 2005 U.S. Dist. LEXIS 12313 (D.N.Y. 2005); and McKowan Lowe & Co., Ltd. v. Jasmine, Ltd., 2005 U.S. Dist. LEXIS 35546 (D.N.J. 2005). Because, Defendants do not allege with any particularity how any damage arose form the alleged misrepresentation, this claim for fraud must fail.

Additionally, Plaintiff fails to allege with any particularity how the misidentification was material and how it was relied upon to their detriment. Accordingly, Plaintiff's fraud claim must be dismissed.

---

[4] "The pleading requirements for common law fraud are essentially the same as those for claims under Section 10(b) and Rule 10b-5." Joffee v. Lehman Bros., 2005 U.S. Dist. LEXIS 12313, *42 (S.D.N.Y. 2005).

**Issue II:       Plaintiff Cannot Establish a Claim for Fraudulent Misrepresentation Against David Maser**

Plaintiff makes no specific allegations against David Maser except to state his relationship to ACN and that:

> 83.     None of the owners, officers, agents or employees of ACN or S.F. Advisors - specifically, John Larocca, Ravi Kothare or David Mather - advised the Players Association at any time before, during or after the term of License Agreement that ACN is nothing more than a d/b/a for S.F. Advisors.

This single allegation cannot support a claim for fraud against Mr. Maser. In <u>Fleet National Bank v. Boyle</u>, 2005 U.S. Dist. LEXIS 44036 (E.D. Pa. 2005), Judge Davis addressed a similar contentions. There, the Court found that these types of allegations cannot support a claim of fraud.

> A review of the Complaint elucidates that the following Individual Defendants are not alleged to have made any misrepresentations, either by signing a materially misleading document or making a misleading statement: Turek, Cady, Colisanti, Fear, Miller, Goldenberg and Cruikshank. n14 Plaintiff asserts that these Defendants are liable for statements made because they "knew that the fraudulent misrepresentations were false when made and intended that Plaintiff would be induced by such false and fraudulent representations to cause Plaintiff to lend DVIFS more money. . . ." (Compl. P 408.) Such general or "group" pleading is not sufficient to maintain a cause of action under the requirements of Rule 9(b). Therefore, Count II is DISMISSED as to Defendants Turek, Cady, Colisanti, Fear, Miller, and Goldenberg.

<u>Id.</u> at *42.

Here, as in <u>Fleet</u>, Plaintiff does not allege that Mr. Maser was made any misrepresentations or was even somehow a party to same. Rather, Plaintiff alleges essentially that Mr. Maser in some capacity failed to correct a misrepresentation made by ACN. This allegation, as in <u>Fleet</u>, is insufficient to satisfy a the requirement of Rule 9b.

Accordingly, for these reasons, as well as those set forth in Issue IV *supra*, the Fraud

9

claim against Mr. Maser must be dismissed.

**Issue III:    Plaintiff's Claims for Fraudulent Misrepresentation and Misappropriation are Barred by the Gist of the Action Doctrine**

The Gist of the Action Doctrine applies in this case to prevent the Players Association from recasting this ordinary, albeit deficient, contract claim into a fraud and misappropriation action. In H.H. Fluorescent Parts, Inc. v. DM Technology & Energy, Inc., 2005 U.S. Dist. LEXIS 26699 (E.D. Pa. 2005)(Joyner, J.), this Court addressed the Gist of the Action Doctrine in the context of a licensing agreement. In H.H., the defendant/counterclaim plaintiff alleged that "Plaintiff fraudulently induced the Defendant into shipping products Defendant was withholding due to non-payment by the Plaintiff.... Defendant claims that Plaintiff was the first to breach the Agreement. ... Defendant further claims that Plaintiff is also responsible for misrepresenting the products that it sells and is in violation of the Lanham Act and is guilty of unfair competition." Id. at *3. This Court found that the Gist of the Action Doctrine "compel[led]" dismissal of the fraud claim because the duties owed derived directly from the licensing agreement at issue.

> Here, we find that the Defendant's claim of fraud springs from the allegations that the plaintiff got more out of the relationship than did the Defendant (i.e., the Defendant's breach of contract counterclaim). The Defendant did not receive payment for the products it was obligated under the Licensing Agreement to produce and deliver for the Plaintiff. Essentially the Defendant claims that it upheld its end of the bargain and that by failing to pay and lying about that failure, Plaintiff breached its duties under the Licensing Agreement.

Id. at *11.

In this case, both the fraud and misappropriation allegations are inextricably linked to contract. The fraud alleged directly relates to purported representations made in the License

10

Agreement and the misappropriation concerns violations relating to the post-termination provisions in the License Agreement.  Moreover, as noted above, the only damages asserted are those which derive directly from the breach of the License Agreement.  Accordingly, as these claims merely restate the breaches of contract as tort claims, they must be dismissed.

**CONCLUSION**

For the reasons set forth at length above, Plaintiff respectfully requests that this Honorable Court dismiss Counts III and V of the Complaint.

                                                  NEIL E. JOKELSON & ASSOCIATES, P.C.

                                          BY: _____/DEJ2238
                                                  NEIL E. JOKELSON, ESQUIRE
                                                  ATTORNEY I.D. #02486
                                                  DAVID E. JOKELSON, ESQUIRE
                                                  ATTORNEY I.D. #73734
                                                  NEIL E. JOKELSON & ASSOCIATES, P.C.
                                                  230 South Broad Street, 8th Floor
                                                  Philadelphia, PA 19102
                                                  (215) 735-7556

**CERTIFICATE OF SERVICE**

       I, David E. Jokelson do hereby certify that on January 29, 2007, I served a true and correct copy of Defendants S.F. Advisors, LLC, d/b/a Affinity Club Network, LLC, Ravi E. Kothare and David M. Maser's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), together with the Defendants' proposed Order by facsimile and United States First Class Mail, postage prepaid, upon the following:

    Camille M. Miller, Esquire
    Melanie A. Miller, Esquire
    Cozen & O'Connor, P.C.
    1900 Market Street
    Philadelphia, PA 19103
    *(Fax: 215-701-2273)*

    Russell S. Jones, Jr., Esquire
    Travis Salmon, Esquire
    Shughart Thomson & Kilroy, P.C.
    Twelve Wyandotte Plaza
    120 West 12th Street, Suite 1500
    Kansas City, Missouri 64105
    *(Fax: 1-816-374-0509)*

    Brian P. McVan, Esquire
    162 South Easton Road
    Glenside, PA 19038
    *(Fax: 215-884-2779)*

               NEIL E. JOKELSON & ASSOCIATES, P.C.


                BY:_____/DEJ2238
                   NEIL E. JOKELSON, ESQUIRE
                   ATTORNEY I.D. #02486
                   DAVID E. JOKELSON, ESQUIRE
                   ATTORNEY I.D. #73734
                   NEIL E. JOKELSON & ASSOCIATES, P.C.
                   230 South Broad Street, 8th Floor
                   Philadelphia, PA 19102
                   (215) 735-7556