IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION** )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>**S.F. ADVISORS, LLC, d/b/a AFFINITY CLUB NETWORK, LLC, RAVI V. KOTHARE, and DAVID M. MASER** )<br>)<br>)<br>)<br>Defendants.  )<br>) | **Civil Action No. 06-5211** |

**MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION'S
<u>BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

Defendants' motion to dismiss should be denied because the Major League Baseball Players Association ("Players Association") has sufficiently stated valid misrepresentation claims against all defendants, and the "Gist of the Action" doctrine does not prevent the Players Association from pleading fraudulent misrepresentation or right of publicity claims against defendants. In any event, defendants' motion to dismiss is moot because the First Amended Complaint that is being filed contemporaneously with this opposition brief, contains more particular and expanded allegations against defendants.

**I.     Factual Background**

On November 15, 2004, the Players Association entered into a license agreement ("License Agreement") with ACN, whereby the Players Association gave ACN a license to operate "player membership clubs" utilizing the Players Association's PLAYERS CHOICE CLUB mark, as well as Major League baseball players' names and other personal indicia ("Player Rights") to provide benefits for ACN network members. *See* First Amended

Complaint, ¶ 22.  In the License Agreement, ACN acknowledged the Players Association's exclusive group licensing rights and that ACN required a license from the Players Association to lawfully operate its membership clubs.  *See id.*, ¶ 23.

Pursuant to the terms of the License Agreement, ACN was to make royalty payments to the Players Association, based on percentages of membership fees, members' purchases of products, and sale of other sports and entertainment membership clubs.  *See id.*, ¶ 24.  The License Agreement further provided that ACN was to pay the Players Association guaranteed minimum royalties throughout the contract period.

The License Agreement contained a "Post-Termination" provision that allowed the Players Association the right to immediately terminate the License Agreement if ACN failed to make royalty payments twice in a twelve-month period, or if ACN otherwise materially breached the agreement and did not cure the breach within the time allowed.  *See id.*, ¶ 26.  In the License Agreement, ACN contractually agreed not operate its membership clubs or use the Players Association's trademarks after the termination of the agreement.  *See id.*, ¶ 26.

In 2006, ACN failed to pay $200,000 towards the guarantee minimum royalty, due on or before June 30, 2006.  *See id.*, ¶ 61.  ACN also failed to pay the sum of $350,000, due on or before September 30, 2006.  *See id*, ¶ 61.  On October 23, 2006, the Players Association notified ACN that its License Agreement had been terminated.  *See id.*, ¶ 62.

Despite numerous letters and telephone calls from the Players Association to representatives of ACN, ACN continued to use the Players Rights in its business operations, even though its use of the Player Rights is no longer authorized by the Players Association.  *See id.*, ¶ 69.  ACN also continued to use the Players Association Marks, specifically the PLAYERS CLUB CHOICE and PLAYERS CHOICE and design marks, in its operations, even though it is

no longer licensed to do so by the Players Association. *See id.*, ¶ 70. Further, ACN failed to comply with any of its post-termination obligations pursuant to the License Agreement. *See id.*, ¶ 71.

On November 24, 2006, the Players Association filed a Verified Complaint and Application for Temporary Injunction against defendants S.F. Advisors, LLC, d/b/a Affinity Club Network, LLC, Ravi V. Kothare, John Larocca and David M. Maser on November 27, 2006.[1] The Players Association alleged five separate causes of action: trademark infringement, unfair competition, misappropriation of publicity rights, breach of contract and fraudulent misrepresentation.

On December 11, 2006, the defendants stipulated to injunctive relief, including (1) discontinuing all use of ACN's rights pursuant to the License Agreement; (2) discontinuing the discontinuing the use of any and all Trademarks granted pursuant to the License Agreement; (3) discontinuing any representation or suggestion that the defendants' products or services are licensed, sponsored, approved or endorsed by the Players Association; (4) taking down, deactivating or otherwise discontinuing ACN's websites www.playerschoiceclub.com and www.playerschoicegold.com and any other websites used to market or in support of the Players Choice Clubs; (5) ceasing to use and/or sell all artwork and product (whether finished goods or work-in-process) bearing any version of the Players Association's marks and/or any other rights and trademarks granted in the License Agreement; (6) ceasing all billing of current memberships for Players Choice Clubs; (7) ceasing sales of new memberships and renewals for Players Choice Clubs; (8)

---

[1] On February 5, 2007, the Players Association filed a stipulation of dismissal of all claims against John Larocca, who was named as an individual defendant in the Verified Complaint.

3

refunding all payments made by members of Players Choice Clubs for months beyond October, 2006, including prorated refunds on annual memberships; and (9) ceasing to use and transferring to the Players Association, an electronic file, with an attached printed hard copy, containing the entire Players Choice Clubs membership database.

On January 29, 2007, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendants have not filed an Answer or otherwise filed a responsive pleading under Federal Rule of Civil Procedure 15(a).[2]

## II. Standard for Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of a complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). Court may grant a motion to dismiss only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004). When considering a motion to dismiss, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *D.P. Enters. v. Bucks County Cmty, Coll.*, 725 F.2d 943, 944 (3d Cir. 1984). Judged by these standards, defendants' motion should be denied.

## III. Argument

### A. New York Law Applies to All Claims.

---

[2] Because defendants have not filed a responsive pleading under Federal Rule of Civil Procedure 15(a), the Players Association is entitled to amend its complaint "as a matter of course" without asking for leave of court. *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3rd Cir. 1989).

Defendants argue, albeit briefly, that Pennsylvania law applies to the dispute between the parties. Defendants are wrong. The parties clearly and unambiguously agreed that New York law would govern any dispute arising under the contract. The License Agreement states:

> This agreement is made within the State of New York and shall be construed in accordance with the laws of the United States and the State of New York. Licensee hereby expressly waives any right to the benefits of remedial legislation, if any, of Licensee's home state.

In Pennsylvania, with regard to contractual choice-of-law provisions, courts will "honor the 'law of the state chosen by the parties regarding issues that could not have been resolved by the contract unless 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice.' *Zavecz v. Yield Dynamics, Inc.*, 179 Fed.Appx. 116, 120, 2006 WL 1158616, at *4 (3rd Cir. 2006) (quoting Restatement (Second) Conflict of Laws § 187(2)(a)).

Here, there is a substantial relationship between New York, the parties and the License Agreement. The agreement was executed in New York, and the Players Association's principal place of business is in New York. The Players Association has a strong interest in using New York law, as the choice-of-law provision facilitates uniformity and consistency with respect to licenses it gives to entities around the country. A failure to enforce the choice-of-law provision here could jeopardize the enforceability of other licenses and could also have a huge impact on any future disputes with the Players Association's licensees.

The choice-of-law analysis is not changed because the Players Association has filed additional "tort" claims. "The purview of a contractual choice of law provision is not limited to contract claims; such a clause can govern "claims in tort . . . on the grounds that false representations were made." *Organ v. Byron*, 435 F.Supp.2d 388, 391 (D. Del. 2006)(quoting

5

*Abry Partners V. L.P. v. F & W Acquisition LLC*, 891 A.2d 1032 (Del.Ch. 2006). Accordingly, New York law should govern all claims in this case.

This Court should uphold and enforce the parties' clear intentions for New York law to apply in this dispute.

### B. Plaintiff Has Sufficiently Pled Its Fraudulent Misrepresentation Claim.

Defendants argue that the Players Association has failed to properly allege fraud against defendants ACN and Maser. Defendants' argument is without merit. First, defendants' use of Pennsylvania law is misplaced (*see* discussion, *supra*), thus, their cited authority is not helpful to this issue. Second, defendants ignore key factual allegations in the original complaint.

"To recover damages for fraud, a plaintiff must prove (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." *Ozelkan v. Tyree Bros. Environmental Services, Inc.*, 29 A.D.3d 877, 878-879, 815 N.Y.S.2d 265, 267 (N.Y.App. Div. 2006).

Here, the Players Association adequately pleaded all four elements of fraud. Plaintiff specifically alleged (1) misrepresentation – "ACN misrepresented in the License Agreement that it is a New Jersey corporation, with offices located at 750 Route 73 South Street, Marlton, NJ 08055" (Complaint, ¶ 81); "None of the owners, officers, agents or employees of ACN or S.F. Advisors – specifically, John Larocca, Ravi Kothare or David Maser – advised the Players Association at any time before, during or after the term of License Agreement that ACN is nothing more than a d/b/a for S.F. Advisors" (Complaint, ¶ 83); (2) Reliance – "The representations made by Defendants were intentionally made for the purpose of inducing the

6

Players Association to act upon them" (Complaint, ¶ 86); (3) Justifiable reliance – "The Players Association reasonably relied and acted upon the representations made and omissions in determining to license ACN" (Complaint, ¶ 87); and (4) Damages – "The Players Association has sustained damage in an amount to be determined at trial by relying upon Defendants' representations." (Complaint, ¶ 88).

These specific allegations meet the federal notice pleading standard, as well as the standard for stating a valid claim for fraud. *See Ozelkan*, 29 A.D.3d at 878-879. In any event, defendants' motion to dismiss is rendered moot by the First Amended Complaint containing additional specific allegations as to defendants' fraudulent conduct, that is being contemporaneously filed with this opposition brief.

### C. Plaintiff's Misappropriation and Fraud Claims Are Not Barred By the Gist of the Action Doctrine

Defendants' assertion that the Players Association's fraud and misappropriation of publicity rights claims are barred by the "gist of the action" doctrine is wholly misplaced for several reasons. First, New York does not even recognize a "gist of the action" doctrine.[3] Because New York law applies to the claims in this action, defendants' argument must fail.

Additionally, and regardless of what applicable law applies, the Players Association's claims are not barred by the "gist of the action" or any other similar doctrine because they are based on defendants' independent legal duties. Though they may be connected with the License Agreement, the Players Association's tort claims are separate and apart from their obligations set forth in the agreement. *See Clark-Fitzpatrick,* 70 N.Y.2d at 389, 516 N.E.2d at 194 (tort claims

---

[3] Though New York recognizes the rule in that a tort claim will not lie when the conduct or act complained of is essentially a breach of contract, *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 194 (N.Y. 1987), this rule does not apply in cases

2016420.1

are proper when the defendant has violated an independent legal duty that, although it may be connected with and dependant on the contract, does not find its origin in the contract); *see also eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Penn. 2002) ("gist of the action" doctrine only bars those claims when the parties "obligations are defined by the terms of the contract and not by the larger social policies embodied in the law of torts.").

Defendants' reliance on *H.H. Fluorescent Parts, Inc. v. DM Technology & Energy, Inc.*, 2005 U.S. Dist. LEXIS 26699 (E.D. Penn. 2005), is misplaced. In *H.H. Fluorescent*, the defendant cross-claimed against plaintiff alleging that he fraudulently induced defendant into shipping certain goods under their agreement for which plaintiff never intended to pay. *HH Fluorescent*, 2005 U.S. Dist. LEXIS 26699, at *3. The parties' duties and obligations were governed by that contract and the plaintiffs conduct breached those terms. *Id*. The court found that the tort claim arose solely out of the agreement between the parties and refused to allow an ordinary breach of contract claim to be transformed into a tort claim.

Here, the Players Association's tort claims are based on defendants' breaches of independent legal duties rather than ACN's alleged contractual breaches. The Players Association alleges that defendants committed fraud by inducing the Players Association into entering the License Agreement through defendants' misrepresentations about ACN's corporate bona fides. Such fraudulent actions are prohibited by social policy and are separate and apart from the rights and obligations agreed to in the license agreement. *See Academy Plaza L.L.C.1 v. Bryant Asset Management*, 2006 WL 1652687 *10-11 (Pa. 2006) ("fraudulent misrepresentations that induced plaintiffs to enter into the Agreement implicate society's interest

---

such as this in which the tort claims arise out of breaches of duty separate and apart from the obligations set forth in the agreement.

in preventing the formation of contracts based on fraud"); *Clark-Fitzpatrick,* 70 N.Y.2d at 389, 516 N.E.2d at 194.

Moreover, the Players Association's right of publicity claim involves defendants' continued use of Major League baseball players' publicity rights *after the License Agreement had been terminated*. Defendants contractual breaches of failing to pay royalties during the term of the agreement are completely separate and apart from defendants' continued unauthorized use of the Major League baseball players' publicity rights. True, the continued use of the players' identities breached the License Agreement, but defendants' misappropriation of these publicity rights is also a claim for the breach of a duty that exists outside of the contract. *See Academy Plaza*, 2006 WL 1652687 at *10-11; *Clark-Fitzpatrick,* 70 N.Y.2d at 389, 516 N.E.2d at 194. As a result, the Players Association's claim is not based on conduct that would be covered by a claim for breach of contract. Therefore, neither of Players Association's tort claims are barred by the gist of the action doctrine.

### IV.  Conclusion

For the reasons discussed above, this Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Russell S. Jones, Jr.
RUSSELL S. JONES, JR.   MO #30814
TRAVIS L. SALMON   MO #53090
of
SHUGHART THOMSON & KILROY, P.C.
Twelve Wyandotte Plaza
120 W. 12th Street, Suite 1500
Kansas City, MO 64105
Phone: (816) 421-3355
Fax: (816) 374-0509
rjones@stklaw.com
tsalmon@stklaw.com

    and

CAMILLE M. MILLER
MELANIE A. MILLER
of
COZEN O'CONNOR, P.C.
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-7273
Fax: (215) 701-2273

ATTORNEYS FOR PLAINTIFF
MAJOR LEAGUE BASEBALL
PLAYERS ASSOCIATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of February, 2007, a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court, and further a copy being mailed to:

Neil E. Jokelson
David Jokelson
Neil E. Jokelson & Associates, P.C.
230 S. Broad Street, 18th Floor
Philadelphia, PA 19102-4104

ATTORNEYS FOR DEFENDANTS

    /s/ Russell S. Jones, Jr._____
ATTORNEYS FOR PLAINTIFF
MAJOR LEAGUE BASEBALL
PLAYERS ASSOCIATION

2016420.1