MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION v. S.F. ADVISORS, LLC et al | Doc. 24 Att. 11
Jul 15 05 05:46p Sterling Law Group, LLC 856-988-7562 p.2
Case 2:06-cv-05211-JCJ Document 24-12 Filed 02/16/2007 Page 1 of 11
JUL-15-2005 11:31 MLBPA 2127524378 P.02



# MLB PLAYERS CHOICE

EVIE C. GOLDSTEIN
ASSISTANT GENERAL COUNSEL, LICENSING

July 15, 2005

**VIA FAX & OVERNIGHT MAIL**

Affinity Club Network, LLC
Two Penn Center, Suite 200
Philadelphia, PA 19102
Attention: Ravi Kothare

Dear Ravi:

As discussed at our meeting in Detroit on July 11, 2005, Affinity Club Network, LLC ("ACN") has committed numerous breaches of the license agreement between ACN and the Major League Baseball Players Association ("MLBPA"), dated as of November 15, 2004 ("Agreement"), which have damaged the MLBPA and which would allow it to terminate the Agreement effective immediately.

In light of our discussion in Detroit, however, the MLBPA is willing at this time to consider continuation of its licensing relationship with ACN under the Agreement, **provided that** ACN complies with all of the following requirements:

    1. ACN shall satisfy all of its financial and/or other commitments to George Brett and to Dave Winfield with respect to their All Star Game-related appearances in Detroit.

    2. ACN shall pay MLBPA, by no later than July 18, 2005, and prior to any use of the Rights and/or Trademarks, the Seventy Five Thousand Dollar ($75,000) Guaranteed Minimum Royalty payment that was due on June 30, 2005, plus interest per the Agreement in the amount of Five Hundred Fifty Six Dollars and Seventy One Cents ($556.71).

    3. Ravi Kothare shall personally guarantee the remainder of the Guaranteed Minimum Royalty to be paid in 2005, totaling an additional Three Hundred Thousand Dollars ($300,000) (after payment of the $75,000 referenced above). The guaranty shall be in the form attached hereto, fully executed and returned to the MLBPA no later than July 18, 2005, and such guaranty shall remain in effect whether or not ACN is terminated by MLBPA prior to the end of 2005.

    4. In the event ACN fails to make timely payment to MLBPA of any royalty or other payment due for calendar year 2005, or fails to make timely submission of any royalty report due



MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION     **Exhibit K**
12 E. 49th St. • New York, NY 10017
(212) 826-0809 (212) 752-4378 fax

with respect to calendar year 2005, MLBPA in its sole discretion may rescind Additional Condition # 3 on Schedule B of the Agreement (which prohibits MLBPA from authorizing use of the Rights and/or Trademarks by any other entity for use in connection with membership clubs), by notice to ACN effective immediately upon the sending of such notice.

5. Effective immediately, and continuing until receipt of written notice from MLBPA to the contrary, ACN shall participate in weekly meetings with MLBPA to review all ongoing aspects of ACN's program. These meetings shall be for discussion, analysis and review purposes only. Any future plans of ACN which are discussed at these meetings shall also be communicated to MLBPA in writing. No written approvals will be provided at such meetings. All requests for approval must be submitted to MLBPA in writing utilizing the MLBPA approval form, and MLBPA shall respond within the timeframe provided for in the Agreement.

6. ACN acknowledges that, pursuant to the Agreement, any web site developed, marketed and/or distributed by ACN or any licensee or agent of ACN in connection with the Licensed Products and/or utilizing the Rights and/or Trademarks shall be solely for the purpose of advertising, promoting, selling, servicing and maintaining the membership clubs offered by ACN pursuant to its license with MLBPA. Under no circumstances shall any ACN web site function as a "content" site offering users editorial or interactive content relating to Major League baseball players.

7. ACN agrees that it will not launch or administer any membership club(s) other than MLBPA-licensed membership clubs until twelve (12) months after ACN has attained a paid membership base of Five Hundred Thousand (500,000) for the membership clubs licensed by MLBPA.

8. ACN acknowledges and agrees that, to the extent it sells club memberships to another corporate or business entity at a "wholesale" rate, the royalty paid to MLBPA under the Agreement shall be paid on the "retail" price such corporate or business entity charges individual consumers for club membership (i.e., the price at which the membership is offered to individual customers, employees, salesmen, etc.). By way of example, if Corporation X purchases club memberships from ACN at a rate of $25 for a one-year membership, and then offers such memberships to its customers for an annual fee of $100, MLBPA's royalty shall be calculated on the $100 "retail rate" to the ultimate purchaser.

To indicate your agreement with the foregoing, please sign where provided for below. To the extent any term contained herein is inconsistent with any provision of the Agreement, the terms of this letter agreement shall govern, and the Agreement shall be deemed amended to incorporate each of the terms set forth herein.

As previously emphasized, no use of the Rights and/or Trademarks may be made by ACN until we have received a signed copy of this letter and the provisions numbered 1-3, above, have been satisfied.

Sincerely,

*Evie Goldstein* (signature)

Evie C. Goldstein

**ACCEPTED & AGREED:**

*signature*

**Ravi Kothare**

cc:   Judy Heeter
      Richard White
      David Maser

# GUARANTY FOR
# RAVI KOTHARE

| Licensee: | Affinity Club Network, LLC | Licensor: | Major League Baseball |
| --- | --- | --- | --- |
| | a New Jersey corporation | | Players Association |
| | Two Penn Center, Suite 200 | | 12 East 49th Street |
| | Philadelphia, PA 19102 | | New York, NY 10017 |

**Guarantor:** Ravi Kothare

---

**CONTINUING GUARANTY.** For good and valuable consideration, Ravi Kothare, ("Guarantor") absolutely unconditionally guarantees and promises to pay to Major League Baseball Players Association ("Licensor") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Affinity Club Network, LLC ("Licensee") to Licensor on the terms and conditions set forth in this Guaranty.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

**Guarantor.** The word "Guarantor" means Ravi Kothare.

**Guaranty.** The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Licensor dated July ____, 2005.

**Indebtedness.** The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Licensee's liabilities, obligations, debts, and indebtedness to Licensor, now existing or hereinafter incurred or created, pertaining to or arising from the obligations of the Licensee for the year 2005 set forth in the License Agreement between Licensor and Licensee, including, but not limited to the guaranteed minimum royalty set forth in the License Agreement and all obligations of Licensee under all outstanding agreements between Licensee and active major league baseball players, and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Guarantor may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the indebtedness may be or may become barred or unenforceable against Guarantor for any reason whatsoever; and whether the indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise. Notwithstanding the foregoing or any other provision of this Guaranty to the contrary, however, except as set forth in the paragraph headed "GUARANTOR'S WAIVERS," Guarantor's obligation for the Indebtedness as herein set forth shall be reduced by the amount of each payment (each a "Qualifying Payment") by Licensee to Licensor (including without limitation that payment in the amount of $75,000 received by Licensor on July 18, 2005) as of the date one hundred (100) days following the date on which such Qualifying Payment clears the Licensee's bank account (the clear date), provided that no petition in bankruptcy,

1

voluntary or involuntary, has been filed with respect to the Licensee during the one hundred (100) days preceding the clear date of each Qualifying Payment.

**License Agreement.** The words "License Agreement" means the License Agreement dated as of November 15, 2005 between Licensor and Licensee.

**Licensee.** The word "Licensee" means Affinity Club Network, LLC.

**Licensor.** The word "Licensor" means the Major League Baseball Players Association, an unincorporated association under the laws of the State of New York.

**Related Documents.** The words "Related Documents" mean and include without limitation all instruments, agreements, documents, whether now or hereafter existing, executed in connection with the License Agreement.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration otherwise, of all Indebtedness. Accordingly, except as expressly set forth in this Guaranty, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Licensor without the necessity of any acceptance by Licensor, or any notice to Licensee or to Guarantor, and will continue in full force until all Indebtedness incurred or contracted shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full.

**GUARANTOR'S AUTHORIZATION TO LICENSOR.** Guarantor authorizes Licensor, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) to extend additional credit to Licensee; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the License Agreement, the Indebtedness or any part of the Indebtedness, including increases and decreases of fees or other charges on the Indebtedness; extensions may be repeated and may be for longer than the original License Agreement; (c) to take and hold security for the payment of the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Licensee's sureties, endorsers, or other guarantors on any terms or in any manner Licensor may choose; (e) determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Licensor in its discretion may determine.

2

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Licensor that (a) except as expressly set forth in this Guaranty, no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) Guarantor has full power, right and authority to enter into this Guaranty; (c) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (d) Guarantor has not and will not, without the prior written consent of Licensor sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or substantially all of Guarantor's assets; (e) upon Licensor's request, Guarantor will provide to Licensor financial and credit information in a form acceptable to Licensor, and such other financial information which has currently been, and all future financial information which will be provided to Licensor is and will be true and correct in all material respects and fairly represent the financial condition of Guarantor as of the dates the financial information is provided; (f) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (g) Licensor has made no representation to Guarantor as to the creditworthiness of Licensee; and (h) Guarantor has established adequate means of obtaining from Licensee on a continuing basis information regarding Licensee's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Licensor shall have no obligation to disclose to Guarantor any information or documents acquired by Licensor in the course of its relationship with Licensee.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Licensor (a) to continue in force the License Agreement to Licensee; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Licensee, Licensor, any surety, endorser or other guarantor in connection with the License Agreement or the Indebtedness; (c) to resort to payment or to proceed directly or at once against any person, including Licensee or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Licensor from Licensee, any other guarantor, or any other person; (e) to give notice of the terms, time and place of any public or private sale of personal property security held by Licensor from Licensee or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Licensor's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Licensor from bringing any action, including a claim for deficiency, against Guarantor, before or after Licensor's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Licensor which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Licensee for reimbursement, including without limitation any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Licensee, of any other guarantor, or of any other person, or by reason of the cessation of Guarantor's liability from any cause whatsoever, other than payment in full in legal tender, of

3

the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Licensor against Guarantor is commenced there is outstanding Indebtedness of Licensee to Licensor which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Licensee, whether voluntarily or otherwise, or by Guarantor or by any third party, on the Indebtedness and thereafter Licensor is forced to remit the amount of that payment (a) to Licensee's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (b) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Licensor or any of Licensor's property, or (c) by reason of any settlement or compromise of any claim made by Licensor with any claimant (including without limitation Licensee or Guarantor), the Indebtedness shall be considered unpaid to the purpose of enforcement of this Guaranty and this Guaranty shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Guaranty or of any note or other instrument or agreement evidencing the Indebtedness and Guarantor shall remain liable for the amount repaid or recovered to the same extent as if that amount never had been originally received by Licensor.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Licensee, the Guarantor or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF LICENSEE'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Guarantor to Licensor, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Licensee, whether or not Licensee becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Licensee, upon any account whatsoever, to any claim(s) that Licensor may now or hereafter have against Licensee. In the event of insolvency and consequent liquidation of the assets of Guarantor through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Licensee applicable to the payment of the claims of both Licensor and Guarantor shall be paid to Licensor and shall be first applied by Licensor to the Indebtedness of Licensee to Licensor and any balance shall be promptly paid to Guarantor. Guarantor does hereby assign to Licensor all claims which it may have or acquire against Licensee or against any assignee or trustee in bankruptcy of Licensee; provided, however, that such assignment shall be effective only following Licensee's default under the License Agreement for the purpose of assuring to Licensor full payment in legal tender of the Indebtedness. If Licensor so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Licensee to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be made available for inspection by Licensor.

4

1400031 Word

Guarantor agrees, and Licensor hereby is authorized, in the name of Guarantor, from time to time to execute and file any such documents and to take such other actions as Licensor deems necessary or appropriate to preserve and enforce its rights under this Guaranty. Nothing contained in this Guaranty is intended to create a security interest in any of the assets of Guarantor.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Guaranty has been delivered to Licensor and accepted by Licensor in the State of New York. If there is a lawsuit, Guarantor agrees upon Licensor's request to submit to the jurisdiction of the courts of State of New York. This Guaranty shall be governed and construed in accordance with the laws of the State of New York.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Licensor's costs and expenses, including reasonable attorneys' fees and Licensor's legal expenses incurred in connection with the enforcement of this Guaranty. Licensor may pay someone else to help enforce this Guaranty. Guarantor shall pay the reasonable costs and expenses of such enforcement. Costs and expenses include Licensor's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court and such additional fees as may be directed by the court.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Licensor informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Guarantor or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Guarantor named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Guarantor" and "Guarantor" respectively shall mean any one or more of them. The words, "Guarantor," "Guarantor," and "Licensor" include the heirs,

5

1400031 Word

**AFFINITY CLUB NETWORK, LLC**

HUDSON UNITED BANK
WILLOW RIDGE PLAZA OFFICE
MARLTON, NJ 08053
55-150-212

1099

7/15/2005

Pay to the order of MLBPA $ **75,556.71

Seventy-Five Thousand Five Hundred Fifty-Six and 71/100************************************************ DOLLARS

MLBPA
12 East 49th Street
24th Floor
New York, NY 10017

MEMO

⑈⁜001099⁜⁜ ⁜:021201503⁜: 398242253⁜⁜

---

**AFFINITY CLUB NETWORK, LLC**
MLBPA                                   7/15/2005          1099
                                                      75,000.00
                                                         556.71

Hudson United Bank                                    75,556.71

**AFFINITY CLUB NETWORK, LLC**
MLBPA                                   7/15/2005          1099
                                                      75,000.00
                                                         556.71

**PAYMENT RECORD**

Hudson United Bank                                    75,556.71

DELUXE BUSINESS FORMS 1-800-328-0304 www.deluxeforms.com

successors, assigns, and transferees of each of them. All of the obligations of Guarantor under this Guaranty (if more than one Guarantor) shall be joint and several. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret ore define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable.

**Successors and Assigns.** This Guaranty shall be understood to be for the benefit of Licensor and for such other person or persons as from time to time become or be the holder or owner of any of the Indebtedness or any interest therein, and this Guaranty shall be transferable to the same extent and with the same force and effect as any such Indebtedness may be transferable.

**Waiver.** Licensor shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Licensor. No delay or omission on the part of Licensor in exercising any right shall operate as a waiver of such right or any other right. A waiver by Licensor of a provision of this Guaranty shall not prejudice or constitute a waiver of Licensor's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Licensor, nor any course of dealing between Licensor and Guarantor shall constitute a waiver of any of Licensor's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Licensor is required under this Guaranty, the granting of such consent by Licensor in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Licensor.

**Jury Waiver.** Licensor and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Licensor and Guarantor against the other.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE FROM GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LICENSOR AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LICENSOR IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED July 15 , 2005.**

GUARANTOR:

_____
**Ravi Kothare**

6

1400031 Word

# STERLING LAW GROUP
# KOTHARE & KORNICKI, L.L.C.
# COUNSELORS AT LAW

## FAX TRANSMISSION COVER PAGE

Phone Number: (856) 988-1414
Fax Number: (856) 988-7562

DATE: 7/15/05          TIME: 5:40 CDT

FROM: Ravi Kothare

TO: Richard White (MLBPA)   FAX: 816-374-0509

RE: ACN

COMMENTS:

As Discussed

Total Number of Pages: 11

Originals to Follow by Mail: Y/N

**Confidentiality Message**

The documents accompanying this telecopy transmission contain information from the firm of Sterling Law Group, L. L.C., Attorneys at Law, which is confidential or legally privileged. The information is intended for the sole use of the individual(s) or company named on this cover sheet. If you are not the intended recipient of this information you are hereby notified that copying, distributing or relying upon this information in any way is strictly prohibited. If you received this information in error, please notify us immediately and we will arrange to have the documents returned to us at no cost to you. If necessary, please call collect. Thank you in advance for your courtesy.